UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION


JOHN DOES I-IV, *et al.*,        )
        Plaintiffs,      )
                    )
   vs.                )     1:06-cv-865-RLY-WTL
                    )
CITY OF INDIANAPOLIS, *et al.*,   )
        Defendants.    )


**FINDINGS OF FACT AND CONCLUSIONS OF LAW CONCERNING
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Having read and reviewed the parties' submissions, and having heard the parties'

oral argument on August 10, 2006, the court now issues its findings of fact and

conclusions of law pursuant to Federal Rule of Civil Procedure 52(a):

## I.  FINDINGS OF FACT

### A.    The Indianapolis Ordinance

1.    Section 631-106(a) of the Revised Code of the Consolidated City and County

("Ordinance" or "Section 631-106(a)") has been amended to provide that:

> It shall be unlawful for any person deemed to be an offender against
> children and required to register under IC 5-2-12 or who have been found
> by a court to be a sexually violent predator, under IC 35-38-1-7.5, or the
> law of any jurisdiction that identifies the person as being likely to
> repeatedly commit a sex offense, or has been convicted of one (1) or more
> of the following offenses:
>
> (a)    Child molesting, under IC 35-42-4-3;
> (b)    Child exploitation (IC 35-42-4-4(b));
> (c)    Child solicitation (IC 35-42-4-6);

1

(d)     Child seduction (IC 35-42-4-7);

(e)     Kidnapping (IC 35-42-3-2), if the victim is less than eighteen (18) years of age;

(f)     An offense in another jurisdiction that is substantially similar to an offense described in clauses (a) through (e);

to be within one thousand feet (1000') of a public playground, recreation center, bathing beach, swimming or wading pool, sports field or facility, when children are present unless such person or persons are accompanied by an adult person who is not also required to register under Ind. Code 5-2-12.

(Judicial notice of the Ordinance).

2.    Section 631-106(b) of the Ordinance has been amended to provide that:

It shall be unlawful for any person required to register under Ind. Code 5-2-12 to bring or accompany any other person required to register under Ind. Code 5-2-12 to a public playground, park, recreation center, bathing beach, swimming or wading poll (*sic*), sports field or facility, when children are present or are expected to be present at such facility or venue.

(Judicial notice of the Ordinance).

3.    Section 631-106(e) of the Ordinance provides that one who violates it is guilty of an infraction that is punishable by progressive fines: $600 for the first violation, $1,000 for the second, and $2,500 for subsequent violations within the same year. (Judicial notice of the Ordinance).

4.    The articulated purpose for the amended ordinance, as contained in the introduction to the Ordinance provided by the City-County Council of the City of Indianapolis and of Marion County, Indiana, is to protect the health and safety of the community, particularly children.  (Judicial notice of the Ordinance).

5.    Defendants have specified that the meaning of the following terms in the

Ordinance are questions of law:

- public playground
- recreation beach
- bathing beach
- swimming pool
- wading pool
- sports field
- sports facility
- when children are present
- when children are expected to be present

Defendants have provided no further definition of these terms than what is provided in the Ordinance itself.  (Deposition of Donald A. Colvin, Jr. ("Colvin Dep."), Ex. 2, ¶ 3).

6.     Defendants have also specified that the meaning of the following phrase in Section 631-106(a) of the amended Ordinance "unless such person or persons are accompanied by an adult person who is not also required to register . . ." is a question of law.  Defendants have provided no further definition.  (Colvin Dep. Ex. 2, ¶ 4).

**B.     Properties Included Within the Ordinance and Its Ramifications**

7.     At the current time, the Indianapolis Department of Parks and Recreation ("Department") owns and/or operates 189 properties throughout Marion County. (Colvin Dep. at 8-12, 31, Ex. 4).

8.     Within the Department's system, there are 133 playgrounds, 25 recreation centers, 1 bathing beach, 22 swimming pools, 13 golf courses, 121 tennis courts, 58 baseball diamonds, and 71 soccer fields.  (*Id*.).

9.      The Department has generated a map that demonstrates a 1000 foot radius from the various amenities present within its properties, including playgrounds, recreation centers, bathing beach, swimming pools, and sports fields or courts, and golf courses.  (Colvin Dep. Ex. 15).

10.     Youth programs for persons, including those under 18, are maintained at several of the Department's golf courses.  (Colvin Dep. at 23-24).

11.     There are at least 152 public schools in Marion County which contain or have access to playgrounds and/or playing (football, soccer, baseball) fields, and/or tennis courts, or are contiguous to Department property containing these items and are within 1,000 feet of public roads or highways.  (Affidavit of Christopher Borm and Matthew O'Connor ("Borm/O'Connor Aff."); Affidavit of Joshua Rosenbaum and Destiny Wenning ("Rosenbaum/Wenning Aff."); Affidavit of Erika Eliason and Emily Woolard ("Eliason/Woolard Aff.").

12.     In addition, there are at least nine non-public schools in Marion County that contain basketball courts, soccer fields, tennis courts, and/or football fields within 1000 feet of public roads or highways.  (Borm/O'Connor Aff.; Rosenbaum/Wenning Aff.; Eliason/Woolard Aff.).

13.     Thus, including the Department's properties and the schools noted above, there are at least 330 separate points within Indianapolis that can be identified as public playgrounds, recreation centers, bathing beaches, swimming pools, or sports fields or sports facilities.  (*See* Findings of Fact ## 8, 11, 12).  This figure does not

include the 13 golf courses, 121 tennis courts, 58 baseball diamonds, and 71 soccer fields that are spread over various Department properties. (*See* Finding of Fact # 8).

14. The court takes judicial notice of the fact that there are other areas within the City of Indianapolis that can properly be characterized as recreation centers, bathing beaches, swimming pools, sports fields or sports facilities, such as the RCA Dome, Conseco Arena, athletic areas at Butler University, Marian College, and University of Indianapolis, and IUPUI, and swimming pools owned by private persons or private organizations or companies.

15. There are few, if any, areas in the City of Indianapolis that can be traveled through or into that will not result in the traveler passing within 1000 feet of public playgrounds, recreation centers, bathing beaches, swimming pools, or sports fields or sports facilities. (*See* Map, Hearing[1] Ex. 15).

16. For example, it is impossible to travel on Interstate 70, either East or West, Interstate 65, either North or South, or on the entire length of Interstate 465 without passing within 1000 feet of public playgrounds, recreation centers, bathing beaches, swimming pools, or sports fields or sports facilities. (Colvin Dep. Ex. 15).

17. It is impossible to travel on the main local streets, Washington Street (either East

_____

[1] The Map was introduced by Plaintiffs during the August 10, 2006 oral argument on Plaintiffs' Motion for a Preliminary Injunction.

or West Washington) or Meridian Street (either North or South) without passing within 1000 feet of public playgrounds, recreation centers, bathing beaches, swimming pools, sports fields or sports facilities.  (*Id.*).

18.    There were 503 separate polling places in Marion County for the 2006 primary election and 128 of these were in public schools, including 108 public schools that had public playgrounds, recreation centers, bathing beaches, swimming pools, or sports fields or sports facilities.  (First Stipulation of the Parties, Attachment 1 to Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction, compared with Borm/O'Connor Aff.; Rosenbaum/Wenning Aff.; Eliason/Woolard Aff.).

### C.    The Effect of the Ordinance on Plaintiffs

####        1.    John Doe I

19.    John Doe I is a resident of Marion County who was convicted of the offense of child exploitation which is one of the offenses specifically noted in Section 631-106(a).  (Affidavit of John Doe I).

20.    He is no longer on probation and has completed counseling.  (*Id.* ¶¶ 4-5).

21.    He has joint custody of his seven year old son.  (*Id.* ¶¶ 6-7).

22.    John Doe I takes his son to parks, pools, and recreation areas in Indianapolis, including playgrounds and pools operated by the Indianapolis Parks and Recreation Department.  (*Id.* ¶¶ 8-9).

23.    The Ordinance prohibits John Doe I and his son from going to these areas unless

they are accompanied by someone who is not on the sex offender registry.  (*Id*. ¶¶ 10-11).

24. John Doe I does not know another adult who is able to accompany him and his son to the areas specified in the Ordinance.  (*Id*. ¶ 11).

25. John Doe I does not understand the phrase "accompanied by an adult" as used in the Ordinance.  He also does not understand how close to him this phrase requires the other adult to be.  (*Id*.).

26. John Doe I is employed in an office that is across the street from, and within 1000 feet of, a playground in a park operated by the City of Indianapolis.  As a result, he violates the Ordinance each time he is at work.  (*Id*. ¶ 12).

27. John Doe I and his son regularly drive through the interstates that pass through Indianapolis and, in doing so, they pass within 1000 feet of areas prohibited by the Ordinance.  (*Id*. ¶ 13).

28. John Doe I is also attending IUPUI and is working on a bachelor's degree. However, he cannot travel to IUPUI's main campus, where his classes are, without passing within 1000 feet of areas that he believes are public playgrounds, recreation centers, swimming pools, sports fields or facilities.  (*Id*. ¶ 14).

29. John Doe I is unable to travel through Indianapolis without passing within 1000 feet of public playgrounds, recreation centers, bathing beaches, swimming or wading pools, and/or sports fields or sports facilities.  (*Id*. ¶ 16).

30. Even when John Doe I is consciously seeking to avoid the areas specified in the

Ordinance, he believes that he may, without knowing it, pass within 1000 feet of the areas.  (*Id*. ¶ 17).

31.   John Doe I is aware that the prohibitions in the Ordinance only apply "when children are present."  Because he is unable to determine when children are going to be present, or when they may arrive if not present, he reasonably deems the Ordinance to be an absolute ban on going within 1000 feet of the prohibited place. (*Id*. ¶ 15).

### 2.   John Doe II

32.   John Doe II lives in Indianapolis and was convicted of child molesting and is therefore subject to the challenged Ordinance.  (Affidavit of John Doe II ¶¶ 2-3).

33.   He is no longer on probation.  (*Id*. ¶ 4).

34.   John Doe II is a truck driver and regularly drives on Interstate 65 through Indianapolis on a route that takes him within 1000 feet of public playgrounds, recreation centers, bathing beaches, swimming or wading pools, sports fields and/or facilities.  (*Id*. ¶ 5).

35.   He is unable to travel through Indianapolis and perform his job without entering the 1000 foot area around the locations noted in Section 631-106(a) of the Ordinance.  (*Id*. ¶ 6).

36.   He does not believe that he can travel to the places he must go to in the course of his everyday life in the City of Indianapolis without passing within 1000 feet of public playgrounds, recreation centers, bathing beaches, swimming or wading

pools, and/or sports fields or sports facilities.  (*Id*. ¶ 11).

37.   He would like to be able to enter the locations noted in the Ordinance to engage in innocent activities.  (*Id*. ¶ 8).

38.   John Doe II also does not understand the meaning of "accompanied by an adult" as used in the Ordinance.  He does not understand if this means that he must stay within a certain distance of the accompanying adult and, if so, what that distance is.  (*Id*. ¶ 9).

39.   Even when John Doe II is consciously looking to avoid the areas specified in the Ordinance, he believes that he may, without knowing it, pass within 1000 feet of the areas specified in the Ordinance.  (*Id*. ¶ 12).

40.   John Doe II would like to vote in the next election.  However, his polling place is within an elementary school that contains playgrounds and a playing field at a close distance to the school.  (*Id*. ¶¶ 13-15).

41.   John Doe II is aware that the prohibitions in the ordinance only apply "when children are present."  However, given that John Doe II has no idea when children are going to be present, or when they may arrive if not present, he reasonably deems the Ordinance to be an absolute ban on going within 1000 feet of the prohibited places.  (*Id*. ¶ 10).

42.   The Ordinance therefore prevents John Doe II from voting in person.  (*Id*. ¶ 15).

43.   John Doe II does not believe that he is eligible to vote via absentee ballot by mail because:

a.    he does not have a specific, reasonable expectation of being absent from the county for the entire 12 hours the polls are open election day;

b.    he will not be absent from his precinct on election day because of service as a precinct election officer, a watcher a challenger or pollbook holder, or employment by an election board to administer the election;

c.    he does not foresee that he will be confined on election day to his residence, a health care facility, or a hospital because of an illness or injury;

d.    he is not elderly and he is not disabled;

e.    he will not be prevented from voting due to caring for an individual confined to a private residence because of illness or injury during the entire twelve (12) hours that the polls will be open;

f.    he will not be scheduled to work at his regular place of employment during the entire twelve (12) hours that the polls will be open on election day;

g.    he is not eligible to vote under Indiana Code § 3-10-11 or Indiana Code § 3-10-12;

h.    he will not be prevented from voting due to observance of a religious discipline or religious holiday during the entire twelve (12) hours that the polls will be open on election day;

i.    he is not an address confidentiality program participant as defined in Indiana Code § 5-26.5-1-6.

(*Id.* ¶ 16).

10

### 3.    John Doe III

44.    John Doe III also lives in Indianapolis and was convicted of child molesting.  He
therefore falls within the scope of Section 631-106(a).  (Affidavit of John Doe III
¶¶ 2-3).

45.    After being charged with his offense, he began a multi-year course of counseling
that he completed.  (*Id*. ¶ 4).

46.    John Doe III has no interest in entering the areas specified in Section 631-106(a)
for any immoral or unlawful purpose, but would like to retain the right that all
others have to enter these areas for innocent purposes.  (*Id*. ¶ 6).

47.    He understands he can enter these areas if he is "accompanied by an adult" non-
offender.  However, he has no idea what this term means.  (*Id*. ¶ 7).

48.    John Doe III understands that the prohibition in Section 631-106(a) applies to the
specified areas "only when children are present."  However, he has no way of
knowing when children will be present, or arrive at, the proscribed areas.  Given
this, he reasonably views the Ordinance as an absolute ban on his right to go
within 1000 feet of the specified areas.  (*Id*. ¶ 8).

49.    When John Doe III goes back and forth to work by car, he drives within 1000 feet
of areas specified in Section 631-106(a).  (*Id*. ¶ 8).

50.    He is unable to travel in and around Indianapolis in the course of his everyday life
without passing within 1000 feet of playgrounds that the public has access to,
recreation centers, bathing beaches, swimming or wading pools, and/or sports

fields or sports facilities.  (*Id*. ¶ 10).

51.   And, even if John Doe III consciously attempts to avoid the areas specified in the Ordinance, he may, without his knowledge, unintentionally pass within the 1000 foot barrier.  (*Id*. ¶ 11).

### 4.   John Doe IV

52.   John Doe IV is a resident of Indianapolis, Indiana, who was convicted of rape in another state.  He has been classified as a sexually violent predator and is therefore subject to Section 631-106(a).  (Affidavit of John Doe IV ¶¶ 2-4).

53.   John Doe IV lives with his wife and nine year old son.  (*Id*. ¶ 2).

54.   In order to leave and return to the subdivision where he and his family reside, he must either pass a public school and its recreation areas or a baseball field.  (*Id*. ¶ 5).

55.   John Doe IV understands that the prohibitions in Section 631-106(a) only apply "when children are present."  However, given that he has no idea when children are present in, or will be present at, these areas, he views the Ordinance as an absolute ban on traveling within 1000 feet of these areas.  (*Id*. ¶ 10).

56.   He also understands that the Ordinance provides that he can enter the specified areas if "accompanied by an adult."  However, he has no idea what that phrase means.  (*Id*. ¶ 9).

57.   John Doe IV is required to travel for his employment and in doing so he must use the roads and interstates within Marion County that pass within 1000 feet of the

areas specified in Section 631-106(a).  (*Id.* ¶ 7).

58.     John Doe IV does not believe that he is able to travel to the places he must go in

the course of his every day life in Indianapolis without passing within 1000 feet of

playgrounds to which the public has access, recreation centers, bathing beaches,

swimming or wading pools, and/or sports fields or sport facilities.  (*Id.* ¶ 11).

59.     Even if he is consciously looking to avoid the areas specified by Section 631-

106(a), John Doe IV believes that he may, without knowing it, unintentionally pass

within 1000 feet of the areas prohibited by Section 631-106(a).  (*Id.* ¶ 12).

## II.     CONCLUSIONS OF LAW

1.      To the extent any of the foregoing findings of fact is a conclusion of law, it is

hereby adopted as a conclusion of law.  To the extent any of the conclusions of law

set forth below is a finding of fact, it is hereby adopted as a finding of fact.

2.      In order to obtain a preliminary injunction, Plaintiffs must establish that:

(1) they have a reasonable likelihood of success on the merits; (2) they have

no adequate remedy at law; (3) they will suffer irreparable harm without the

issuance of the preliminary injunction; (4) the irreparable harm outweighs

any harm that will be suffered by Defendants if the injunction is granted;

and (5) the injunction will not harm the public interest.  *Baja Contractor,*

*Inc. v. City of Chicago*, 830 F.2d 667, 675 (7th Cir. 1987), *cert. denied*, 485

U.S. 993 (1988).

3.      On its face, the Ordinance applies to three classes of persons:

13

(1) those found to be offenders against children and required to register under Indiana Code § 5-2-12;

(2) those found to be a sexually violent predator under Indiana Code § 35-38-1-7.5, or the law of any jurisdiction that identifies the person as likely to commit a sex offense; and

(3) those who have been convicted of the specific offenses enumerated in Section 631-106(a).

4.    Plaintiffs are all subject to Section 631-106(a) of the Ordinance.

###    A.    The Ordinance Is Void for Vagueness

5.    "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

6.    The void-for-vagueness doctrine requires that a statute that prescribes a penalty be written "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

7.    "A statute that 'vests virtually complete discretion in the hands of the police' fails to provide the minimal guidelines required for due process." *Id.* at 358.

8.    Although the doctrine is typically applied to statutes, it applies equally to municipal ordinances. *Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000) (Court found Indianapolis ordinance which prohibited activities defined as "aggressive panhandling" was not unconstitutionally vague).

9.    An otherwise vague statute or ordinance may be rendered sufficiently certain to

14

satisfy due process if it contains a *mens rea* requirement.  *United States v. Conner*, 752 F.2d 566, 574 (11th Cir.), *cert. denied*, 474 U.S. 821 (1985) (quoting *Screws v. United States*, 325 U.S. 91, 102 (1945) ("The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware.")).  *See also* (*Colautti v. Franklin*, 439 U.S. 379, 395 (1979) ("This Court has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of mens rea.").

10.   Section 631-106(a) does not contain a *mens rea* requirement.

11.   Moreover, Section 631-106(a) sets up vague standards that are so indefinite that ordinary persons will not be able to understand what conduct is prohibited.  It therefore fails to establish minimal guidelines to govern law enforcement.

12.   For example, under the Ordinance, Plaintiffs may pass within 1000 feet of the proscribed areas if they are "accompanied by an adult" who is not a sex offender. The term "accompanied" is not defined and inherently vague.  Does it mean within visual or audible contact?  What if that contact is broken momentarily?  In that circumstance, is the person still "accompanied by an adult"?

13.    A federal court will not find a statute or ordinance unconstitutional "if a reasonable interpretation by a state court could render it constitutional in some application."  *Gresham*, 225 F.3d at 908.

14. Because the court finds the term "accompanied" to be inherently vague, there is no interpretation that can be given to Section 631-106(a) that would render it constitutional.

15. In addition, the Ordinance does not define what a "public" playground is. One could reasonably interpret that term to mean any playground that is open to the public or any playground owned by the government.

16. Moreover, although the Ordinance applies to public playgrounds, the word public does not modify the rest of the areas described in Section 631-106(a): recreation center, bathing beach, swimming or wading pool, sports field or facility. Thus, law enforcement could interpret Section 631-106(a) as applying to private property.

17. Section 631-106(a) is therefore unconstitutionally vague and violates Plaintiffs' right to due process.

**B.    The Ordinance Violates the Ex Post Facto Clause**

18. The *ex post facto* clause of the United States Constitution, U.S. Const. Art. I, sec. 10, prohibits retroactive punishment that inflicts greater punishment than when the offense was committed. *See e.g., Lynce v. Mathis*, 519 U.S. 433, 439 (1997).

19. Successive punishment is also prohibited by the double jeopardy clause of the Fifth Amendment to the United States Constitution.

20. In assessing whether a statute or ordinance imposes punishment, the court must first determine whether the legislature intended for the statute or ordinance to be

16

punitive.  If so, the court's inquiry ends.  If, however, the legislature's intention was to enact a law that is civil and non-punitive, the court must further examine whether the statutory scheme is "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Smith v. Doe*, 538 U.S. 84, 92 (2003) (quoting *United States v. Ward*, 448 U.S. 242, 248-249 (1980)).  "Because [the court] 'ordinarily defer[s] to the legislature's stated intent,'" *id.*, (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)), "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id*. (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)).

21. Legislation is civil and non-punitive if its primary purpose is to protect the public from sex offenders.  *Smith*, 538 U.S. at 93.

22. Here, the undisputed purpose of Section 631-106(a) is to protect the health and safety of the community, particularly minor children.  Hence, the Ordinance is intended to be civil and non-punitive.

23. The court's inquiry does not end here since, as indicated above, a determination must be made as to whether the ordinance has the purpose or effect of punishment, regardless of the intent of those creating it.

24. Whether a law's purpose or effect is punitive turns "on its own highly particularized context."  *Flemming v. Nestor*, 363 U.S. 603, 616 (1960).

25. In *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), the court discussed a

number of factors to aid the court in determining whether a law constitutes

punishment.  The factors relevant to the instant case are:  whether the statute or

ordinance "has been regarded in our history and traditions as a punishment;

imposes an affirmative disability or restraint; promotes the traditional aims of

punishment; has a rational connection to a nonpunitive purpose; or is excessive

with respect to this purpose."  *Smith*, 538 U.S. at 97.

26.     "[B]anishment and exile have throughout history been used as punishment."

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 n.23 (1963).  *See also Smith*,

538 U.S. at 98 ("The most serious [criminal] offenders were banished, after which

they could neither return to their original community nor, reputation tarnished, be

admitted easily into a new one.").

27.     Section 631-106(a) restricts Plaintiffs from traveling within 1000 feet of public

playgrounds, recreation centers, swimming and wading pools, sports fields and

facilities, and the like, unless they are accompanied by an adult.  As a result,

Plaintiffs are not able to travel through the City of Indianapolis, John Doe I is not

able to attend work, and John Doe II's ability to vote is severely restricted.  Their

very rights of physical movement have been restricted to such an extent that they

are effectively banished from the City of Indianapolis.  This constitutes historical

punishment.

28.     The traditional aims of punishment are retribution and deterrance.  *Kennedy*, 372

U.S. at 168.

29.   The City of Indianapolis has specified that the purpose of the challenged

Ordinance is to deter criminal behavior directed toward children.  It therefore

promotes the traditional aims of punishment.

30.   Whether the Ordinance subjects Plaintiffs to an affirmative disability or restraint is

dependent upon "how the effects of the [Ordinance] are felt by those subject to it.

If the disability or restraint is minor and indirect, its effects are unlikely to be

punitive."  *Smith*, 538 U.S. at 99.

31.   For the reasons stated in Finding of Fact # 27, the Ordinance imposes an

affirmative disability or restraint.

32.   Finally, the purpose of the Ordinance is to protect persons, particularly children, in

the areas specified in the Ordinance.  The Ordinance is not rationally connected to

this purpose because it applies to persons who are merely traveling near the

prohibited areas and have no interest in going in or near these areas.  It is therefore

excessive.

33.   The Ordinance therefore imposes punishment and violates both the double

jeopardy and *ex post facto* clauses of the United States Constitution.

**C.     Right to Vote**

34.   The Ordinance prevents John Doe II from voting in-person because his polling

place is within a school and is within 1000 feet of playgrounds and a playing field.

35.   He has no way of knowing if children will be present when he votes.

36.   John Doe II is not able to vote while being "accompanied by an adult" as required

19

by the Ordinance.  Thus, John Doe II is precluded from voting in-person.

37.   John Doe II may not vote by mail-in absentee ballot because he does not meet the
requirements of Indiana Code § 3-11-10-24.

38.   It is possible that John Doe II could vote before an absentee board in the City
County Building in Indianapolis prior to election day as provided by Indiana Code
§ 3-11-10-26, provided that he could find a way to downtown Indianapolis without
passing within 1000 feet of the areas prohibited by the Ordinance.

39.   This is not an adequate substitute for voting in-person on election day.  *See, e.g.,
Common Cause/Georgia v. Billups*, 406 F.Supp.2d 1326, 1364-65 (N.D. Ga. 2005)
("[A]bsentee voting simply is not a realistic alternative to voting in person that is
reasonably available for most voters who lack Photo ID. The fact that voters, in
theory, may have the alternative of voting an absentee ballot without a Photo ID
thus does not relieve the burden on the right to vote caused by the Photo ID
requirement.").

40.   Any severe burden on the right to vote requires a showing that the restriction is
narrowly drawn to advance a compelling government interest.  *Burdick v. Takushi*,
504 U.S. 428, 434 (1992).

41.   The Ordinance imposes a severe burden on the right to vote and is not narrowly
tailored.  Preventing persons from voting in-person is not narrowly tailored to
advance the City of Indianapolis' interest in protecting persons, particularly
children, in the areas identified by the Ordinance.

42.    The Ordinance is therefore unconstitutional as violating John Doe II's right to vote.

      **D.    Severability of the 1000 Feet Requirement**

43.    The remainder of a statute or ordinance that contains a portion that is unconstitutional "cannot be deemed separable unless it appears both that, standing alone, legal effect can be given to it, and that the legislature intended the provision to stand, in case others included in the act and held bad should fall."  *State v. Barker*, 809 N.E.2d 312, 317 (Ind. 2004), *cert. denied*, – U.S. – , 126 S.Ct. 666 (2005) (quoting *Dorchy v. Kansas*, 264 U.S. 286, 289-90 (1924)).

44.    "The key question is whether the legislature 'would have passed the statute had it been presented without the invalid features.'" *Barker*, 809 N.E.2d at 317 (quoting *State v. Kuebel*, 241 Ind. 268, 278, 172 N.E.2d 45, 50 (1961)).

45.    In an effort to save Section 631-106(a), Defendants suggest that the court sever the phrase "within 1000 feet (1000')" from the Ordinance.  However, were the court to do so, the Ordinance would not make sense.

46.    Moreover, it is clear from the introduction drafted by the City-County Council that the Council deemed it essential to protect the safety of the public, particularly children, and that those covered by the Ordinance be "prohibited from going within one thousand feet (1000')" of the areas enumerated in the Ordinance. (Ordinance at 1).  Given that this is an essential part of the Ordinance, it cannot be presumed that the Ordinance would have been passed by the City-County Council

if the distance provision was not in the Ordinance.  The "within one thousand feet (1000')" provision is therefore not severable from the remainder of the Ordinance.

47.    Even if the provision could be severed, the Ordinance would still be unconstitutional.  The phrase "accompanied by" is vague, and the Ordinance effectively bans persons from the specified areas without any showing that they were at risk of harming children in those areas.

### E.    Balance of the Preliminary Injunction Factors

48.    There is a strong likelihood that Plaintiffs will prevail on the merits of their constitutional claims.

49.    Plaintiffs will suffer irreparable harm if the injunction does not issue as the Ordinance violates their constitutional rights.  *See, e.g., Cohen v. Cohama County, Miss.*, 805 F.Supp. 398, 406 (N.D. Miss. 1992) ("It has repeatedly been recognized by the federal courts at all levels that violation of constitutional rights constitutes irreparable harm as a matter of law.").

50.    Plaintiffs have no adequate remedy at law.

51.    Defendants will not be harmed by having to conform to constitutional standards and, without an injunction, Plaintiffs will continue to be denied their constitutional rights.  The balance of harms therefore favors the issuance of an injunction.

52.    The public interest is served by protecting the constitutional rights of its citizenry.

53.    Plaintiffs have therefore established all of the requirements for the grant of a preliminary injunction.

54. No bond will be required of Plaintiffs as Defendants are not seeking monetary damages. *See, e.g., Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 985 (2nd Cir. 1996).

**III.   CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Preliminary Injunction is

**GRANTED**.

**SO ORDERED** this  5th  day of October 2006.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Andrew J. Mallon
OFFICE OF CORPORATION COUNSEL
amallon@indygov.org

James B. Osborn
OFFICE OF CORPORATION COUNSEL
josborn@indygov.org

Jacquelyn Bowie Suess
ACLU OF INDIANA
jsuess@aclu-in.org

23